UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHARON STOSUR, | |
| Plaintiff, | No. 19 C 7886 |
| v. | Judge Thomas M. Durkin |
| ABBOTT MOLECULAR, INC., | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

Sharon Stosur alleges that Abbott Molecular violated Title VII and the Age Discrimination in Employment Act when it did not hire her because of her age and in retaliation for complaints she made about sexual harassment. Abbott has moved for summary judgment. R. 62. That motion is granted.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948

(7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

In addition to full-time employees (sometimes known as FTE positions), Abbott has term contracts with individual laboratory technicians, some of whom, like Stosur, are contracted through a staffing agency. Abbott first contracted with Stosur for work in its Diagnostics division from 2011 to 2013. Then beginning in May 2016 when Stosur was 61 years old, Abbott entered into a series of contracts with Stosur for the position of "Clinical Research Associate," or "CRA," in its Medical Affairs division. Stosur's contract was approved by Shariq Khan, the Director of Clinical Research in Medical Affairs. Stosur's initial contract was for six months. Khan approved three extensions of Stosur's contract until May 2018. Abbott was prohibited by law from extending Stosur's contract beyond two years. *See* R. 89 at 6-7 (¶¶ 18-19); R. 64-1 at 6-7 (37:18–38:12).

Stosur worked in Abbott's lab processing blood and tissue samples. Some CRAs also work "in the field." Stosur did not work in the field.

On September 25, 2017, Stosur asked Khan to hire her as a full-time employee. She repeated her request several times over the next seven months. Stosur testified

2

that when she asked Khan why he would not hire her as a full-time employee, he responded that there was "no reason." *See* R. 64-1 at 48 (260:5-10). In response to Stosur's assertions that she had the skills to fill the open positions she sought, he responded, "I know." *See id.* at 48 (260:11-17). Stosur also testified, however, that Khan also told her that she was not qualified for the open positions because she did not have field experience. *See* R. 64-1 at 34 (195:8-13); R. 64-5 at 8 (30:15–31:4). Stosur's contract was extended on October 5, 2017 to May 18, 2018, when it expired. She was not hired as a full-time employee after that.

On September 28, 2017, three days after she initially asked Khan to hire her as a full-time employee, Stosur reported to her staffing agency that a male Abbott employee, who was friends with Khan, had sexually harassed a female employee. The staffing agency reported Stosur's allegations to Abbott, which initiated an investigation led by Sharon Larson. Larson interviewed Stosur, the male employee, and additional witnesses identified by Stosur. Larson concluded that the allegations were unfounded but reminded the male employee of Abbott's anti-harassment policy and coached him regarding how to avoid making comments that others might misconstrue or find offensive.

Khan testified that Larson "may have" told him about Stosur's allegations. *See* 64-5 at 14 (54:5-7). Larson and Khan have since filed declarations stating that Larson did not tell Khan about Stosur's allegation, and Khan only learned about the allegation through this litigation. *See* R. 64-7 ¶ 7 (Larson declaration); R. 64-2 ¶ 30 (Khan declaration). Regardless, Stosur believes Khan knew of her report because the

3

alleged harassment victim had a private meeting with Khan in his office during the relevant time period. *See* R. 64-1 at 20-21 (101:11-24; 102:1-3). But Stosur does not have personal knowledge of what was said in that meeting. *See id.* at 21 (103:13-22). Stosur also alleges that Khan was aware of her complaint because he became "hostile" towards her immediately after she filed it. *See* R. 89 at 9 (¶ 27).

At the beginning of May 2018, Stosur again asked Khan to hire her as a full-time employee. Stosur also asked Khan's manager, Dr. Khaudeja Bano, to hire her in May 2018. *See* R. 64-1 at 52 (277:18-23).

According to Abbott, Khan and Bano declined to hire Stosur or renew her contract because: (1) existing employees could absorb her job duties; (2) she was not qualified for the open positions; and (3) she did not formally apply for any of the open positions. *See* R. 64-2 ¶ 13 (Khan declaration). The primary lack of qualification cited by Abbott is Khan's belief that Stosur lacked field experience. *See id.* ¶ 11.

Stosur alleges that these explanations are pretextual. She claims that Abbott prevented her from filing a formal application by denying her access to Abbott's internal job application website. *See* R. 82 at 7-10 (¶¶ 23, 26, 33). She also argues that the claim that she lacked field experience is false. She asserts that she gained field experience "from previous research work," *see* R. 90 at 5, which she contends is "well set out in her CV." R. 89 at 3 (¶ 6). Stosur argues that Khan admitted that he knew she was qualified for the open positions because in response to her assertions that she had the skills to fill the open positions she sought, he responded, "I know." *See id.* at 48 (260:11-17).

4

After her contract expired, Stosur complained to her staffing agency that Abbott did not hire her as a full-time employee because of her age and the sexual harassment complaint she made. Abbott investigated these allegations, with Larson again serving as the primary investigator, and determined that they were unfounded.

Stosur's complaint includes two counts: Count I for violation of Title VII's anti-retaliation provision; and Count II for violation of the Age Discrimination in Employment Act. Both counts reference Stosur's "termination." But Stosur does not actually allege or argue that she was terminated from any position. Rather, she asserts that Abbott discriminated against her when it failed to hire her as a full-time employee, first in September 2017, and again in May 2018, and that the failure to hire in May 2018 was also in retaliation for her sexual harassment complaint. The undisputed facts show that Stosur was not "terminated" from any position, but that her contract merely expired. Thus, the Court understands her claims to be for Abbott's failure to hire her as an employee upon expiration of her contract.

## Analysis

**I.     2017**

Stosur's claim that Abbott failed to hire her as a full-time employee in 2017 is untimely. Claims under both Title VII and the Age Discrimination in Employment Act must be submitted to the EEOC within 300 days, and then a federal claim filed within 90 days of a decision by the EEOC. *See* 42 U.S.C.A. § 2000e-5; 29 U.S.C.A. § 626. Here, Stosur filed her only EEOC charge on February 7, 2019, which is at least

463 days after she was not hired as an employee in September or October 2017 (calculated from November 1, 2017).

Stosur does not directly address the timeliness of her claim based on the 2017 failure to hire. The following is her only reference to that issue:

> Defendant pushes the argument that Plaintiff filed her EEOC Charge too late, presumably because she should have known in early Fall, 2017 that her two-year contract would be ending. That is irrelevant. She clearly filed within 300 days of Defendant's final refusal to retain her as an "FTE."

R. 90 at 3. Abbott understands Stosur to be suggesting that "a continuing violation theory saves her [2017] claim." R. 96 at 6. To the extent that is what Stosur means to argue, the continuing violation doctrine does not apply to discrete acts like a failure to hire. *See Hildebrandt v. Illinois Dep't of Nat. Res.,* 347 F.3d 1014, 1027 (7th Cir. 2003) (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). To pursue a claim against Abbott for its failure to hire her in the fall of 2017, Stosur needed to file a EEOC charge within 300 days of that occurrence. She did not do that. Stosur filed her EEOC charge on February 7, 2019, and only the 2018 failure to hire is within that range. Therefore, that is the only claim at issue here.

**II.      2018**

For both her age discrimination and retaliation claims, Stosur must identify evidence establishing a prima facie case of discriminatory conduct. In the 'failure to hire' context, a plaintiff satisfies this requirement by showing she: (1) engaged in a statutorily protected activity or is a member of the protected class; (2) applied and had the technical qualifications required for the position; (3) was not hired for the

6

position; and (4) a similarly situated individual who did not engage in statutorily protected activity, or who is not a member of the protected class, was hired for the position. *See Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (retaliation); *Chatman v. Bd. of Educ. of City of Chicago*, 5 F.4th 738, 746 (7th Cir. 2021) (age discrimination).

Summary judgment must be granted to Abbott because Stosur does not dispute that she never applied for the job for which she was not hired. *See* R. 89 at 10-11 (¶¶ 31, 33). Stosur argues that this concession does not prevent her from establishing a prima facie case because Abbott prevented her from applying. Stosur contends that Abbot prevented her from applying by denying her access to Abbott's internal job application website and by ignoring her informal requests to be hired.

The problem with Stosur's argument is that she also concedes that Abbott policy prohibits contractors like her from accessing its internal job application website and requires them to apply through a publicly available website. *See* R. 89 at 25 (¶ 3). Stosur contends that this explanation is pretextual because one former Abbott contractor told her that he and another external applicant were given access to Abbott's internal job website and that one of them was hired based on that application. *See* R. 89 at 26 (¶ 5). Stosur, however, did not depose this former contractor, nor did he submit a declaration in this case. Stosur's assertion about what the contractor told her is hearsay that would be inadmissible at trial and should not be considered on summary judgment.

Stosur further testified that she knew about and had access to Abbott's publicly available job application website, but she did not submit an application through that website. *See* R. 64-1 at 4 (24:3–25:8). Stosur, however, argues that Abbott's reliance on the publicly available website is also pretextual because it was not actually possible to submit an application through that website. Stosur's only evidence supporting this argument is that she personally found the website "cumbersome" and alleges that she was only able to find "two jobs that weren't really relative [sic] to me." *Id.*

Certainly, if it was impossible, or materially more difficult, to apply for jobs through Abbott's publicly available website, such that Abbott effectively prevented Stosur from applying, that would be a basis to deny summary judgment on this element of the claim. But Stosur's personal experience with the website is insufficient evidence to create a question of fact on this issue. The accessibility of Abbott's public job application website is a fact that could have been easily determined through discovery. An expert could have been retained to examine the website. Stosur could have deposed Abbott employees responsible for posting jobs on the website and monitoring applications. Most relevant, Stosur could have discovered (through interrogatories or questions to Larson or Khan at their depositions) what processes were used to hire the employees Stosur has identified as comparators for her claims. At least two of those comparators were contractors like Stosur and were hired as full-time employees. Whether they submitted applications through Abbott's publicly

8

available website should be a readily knowable fact, yet Stosur has not presented any such evidence.

On summary judgment, the Court must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. See *Horton*, 883 F.3d at 948. But here, Stosur has not identified *any* evidence that it was impossible or materially more difficult to apply for jobs through Abbot's public website. The only admissible evidence she presents in this regard is her personal experience, and Stosur does not contend that it was impossible to apply for jobs through the public website. Indeed, she testified that she found at least two jobs for which she could have applied. Stosur found the process "cumbersome." But "cumbersome" is not impossible or even materially more difficult. Relative to the potentially available evidence on this issue, which the Court discussed above, the Court finds that Stosur's limited, personal experience is an insufficient basis to reasonably infer that Abbott's publicly available website was not a viable means of application. Stosur's testimony on this issue amounts to no more than a "mere scintilla" of evidence, and as such it cannot serve to defeat summary judgment. *See Johnson*, 892 F.3d at 894.

Stosur could have sought discovery to explain why she did not submit an application for full-time employment. But she apparently did not do so, because she has not presented any evidence on this issue beyond her limited personal experience and the hearsay statement of a former contractor. Without more robust evidence that could reasonably permit the inferences Stosur's claims require, Stosur cannot

overcome the undisputed fact that she did not apply for the positions for which she was not hired, and so she cannot establish a prima facie case of discrimination or retaliation.

## Conclusion

Therefore, Abbott's motion for summary judgment [62] is granted, and the case is dismissed.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: January 10, 2023